

CLERK'S OFFICE
A TRUE COPY
Aug 08, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

 ☑ Original          ❏ Duplicate

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | Case No. 24-M-464 (SCD) |
| *or identify the person by name and address)* ) | |
| Records & information associated with cellular number ) | **Matter No.: 2023R00176** |
| 626-654-9974 ("Target Cell Phone") in the custody or ) | |
| control of T-Mobile ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

8-22-24

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:      8-8-24. 10:15 am          *Stephen C. Dries*
                                                              *Judge's signature*

City and state:      Milwaukee, Wisconsin          Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.     Records and information associated with the cellular device assigned call number 626-654-9974 ("Target Cell Phone") that is are in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.     Target Cell Phone.

**Particular Things to be Seized**

## I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period March 26, 2024 to the date of this warrant:

        i.  Names (including subscriber names, user names, and screen names);

       ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

     iii.  Local and long distance telephone connection records;

     iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v.  Length of service (including start date) and types of service utilized;

     vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

18

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, per call measurement data (PCMD), Timing Advance, True Call, RTT, LOCDBOR, or similar and real time cell site information for 30 days and other precise location information.

19

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

CLERK'S OFFICE
A TRUE COPY
Aug 08, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
Records & information associated with cellular number )
626-654-9974 ("Target Cell Phone") in the custody or )
control of T-Mobile )

Case No. 24-M-464 (SCD)

**Matter No.: 2023R00176**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 & 841(a)(1) | Conspiracy; Manufacture, distribute, or dispense, or possess with intent to distribute or dispense, counterfeit substance. |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Jacob Dettmering, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 8-8-24 _____

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

## Matter No.: 2023R00176

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 626-654-9974 ("Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3. Because these warrant applications seek the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018 to April 1, 2020. Since April 1,

1

2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

5.      I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and therefore does not set forth all of my knowledge about this matter.

7.      Based on the facts set forth in this affidavit, and by way of summary, I believe there is probable cause to believe that Dominique WILLIAMS (09/07/1989) is: (i) trafficking in controlled substances and (ii) using the Target Cell Phone, such that (iii) the requested location information associated with the Target Cell Phone will reveal the whereabouts of WILLIAMS, which will be probative of WILLIAMS' drug trafficking activities. I know from training and experience that cell phone users normally have their

2

cell telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cell Phones will constitute and lead to evidence of federal offenses, namely 21 U.S.C. §§ 846 & 841(a)(1), that have been committed by WILLIAMS and others, and are being committed by WILLIAMS and others.

8.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.      On July 1, 2024, your affiant obtained a court order signed by the Honorable Pamela Pepper, Chief U.S. District Judge for the Eastern District of Wisconsin, authorizing the interception of wire communications to and from the cellular telephone assigned number 262-993-0926, which is used by Malik NICHOLS, and subscribed to by Nicole Nichols. The order was served to US Cellular on the same date and interception began that night. Along with monitoring incepted calls to and from 262-993-0926, case agents continued employing other investigative methods, including physical and electronic surveillance on the target subjects of this investigation.

10.      On July 5, 2024, at 7:14 pm, NICHOLS, using 262-993-0926, received a phone call from an unidentified male caller using 708-400-0405. During the conversation the UM, using 708-400-0405, told NICHOLS, "Hey what it do Broady? who is this, who is this number, they keep giving me your number I'm like I already got your number, dog." NICHOLS asked, "Who?" The UM responded, "Hold on one second, I'm looking at the

3

number right now. 747-955-6842. You heard me?" NICHOLS asked, "What you say?" UM responded, "Someone keep telling me to call you. Ugh but I already fuck with you all ready. I need a 14, you out here?" NICHOLS responded, "Ya, where you at? Pull up." The UM responded, "I'm on 95th and I got my kids." NICHOLS then asked, "Who keep tell me to add your for hoopahs?" The UM responded, "I just gave you the number. 747-955-6842." NICHOLS said in response, "Damn. Why you be calling that number anyway." The UM said, "That number be texting me, 'Pluff in the city tap in then it will say call Malik,' I'm like I already fuck with Malik though. I don't call you that. I already fuck with you though." Based upon my training, experience, and the investigation to date, I believe that the UM was telling NICHOLS that he received what I believe to be a "mass text" from 747-955-6842, stating that if you want to purchase "Pluff," i.e., marijuana, to contact NICHOLS.

11. On July 11, 2024, at approximately 3:31 p.m., NICHOLS, using 262-993-0926, made an outgoing call to WILLIAMS using 747-955-6842. In the beginning of the conversation, WILLIAMS, who is believed to be a source of supply for NICHOLS, and NICHOLS were rapping with each other, and later in the conversation, WILLIAMS and NICHOLS discussed meeting up. WILLIAMS asked, "Where you at little broadie?" NICHOLS responded, "I'm on 79th and Hampton. " WILLIAMS stated, "Alright motherfucker waiting on you . . . matter of fact I have shit to pay." NICHOLS asked, "Where at? 18th? Where?" WILLIAMS responded, "I sent you the address son." NICHOLS replied, "Alright let me see." NICHOLS then said, "Alright, I'll be there." WILLIAMS said, "Aight." Based upon my training, experience, and the investigation to

date, I believe that WILLIAMS was requesting to meet up with NICHOLS to obtain money owed to him for narcotics sales or to provide NICHOLS with narcotics (or both), because WILLIAMS asked to meet up and then stated he has "shit to pay," believed to be a reference to paying WILLIAMS' source of supply. Based upon my training, experience, and the investigation to date, I further believe that NICHOLS was meeting up with WILLIAMS to obtain additional narcotics because in pertinent intercepted calls intercepted earlier in the day, NICHOLS stated that he would have "smoke" soon.

12.     On July 12, 2024, at approximately 12:08 a.m., NICHOLS, using 262-993-0926 received an incoming call from 747-955-6842 used by WILLIAMS. WILLIAMS asked, "Can you give me a little tip?" NICHOLS responded, "I called him this morning, he said he was going to call me after uhhh after uhh he dropped off his son or something. I was just about to call him." WILLIAMS then asked, "Why didn't he go get his ass tonight?" NICHOLS responded, "Yesterday he was at moms crib when I pulled up over there he was gone at the 'stu.' I was going to pull up at the 'stu' but it was dumping all last night." WILLIAMS responded, "Shit . . ." NICHOLS then stated, "I got a little bit of whats his name left. I'm tryna... uhhh.. I got a little bit of whats his name bro. . . . I just got a Ram. I just got a rental for the weekend. I got a truck so I could do the trailer. I could plug it up to catch the power. I am going to dump it and drop it off on Hampton." WILLIAMS responded, "uhhh . . . " and NICHOLS stated, "I am going to have the heads finish that shit up today." WILLIAMS then said, "Can you . . . ?" and NICHOLS responded, "I am going to call 'Pape [meaning Jerald Campbell].'" Based upon my training, experience, and investigation to date, I believe that NICHOLS told WILLIAMS

that he had some narcotics left (*i.e.,* "some of whats his name left"), and that he was going to sell the remaining narcotics today(*i.e.,* he was referring to having the "heads" ,meaning crackheads, finish that "shit up today" and was speaking with WILLIAMS regarding obtaining additional narcotics).

13.     On July 14, 2024, at approximately, 9:05 a.m., case agents observed, via electronic surveillance, a black Mercedes passenger van bearing California registration 8XML793 with the logo "Ultimate Toys" above the plate enter the parking lot of the Atkinson stash house, and park near the rear white door.  Approximately one minute later, the passenger side sliding door of the Mercedes van opened from the inside, and WILLIAMS was observed exiting the door wearing a black hooded sweatshirt with colorful lettering on the arms, loose black sweatpants with colorful lettering down the pantlegs, white shoes, a white shirt, and a black hat with "Gallery Dept." lettering.  Case agents have previously observed WILLIAMS wearing this distinctive "Gallery Dept." hat in the past.  WILLIAMS then removed two large, heavy black/silver colored hardcover suitcases from the interior of the Mercedes van and WILLIAMS then took those suitcases into the Atkinson stash house. A screenshot is set forth below.

6



14.     At approximately, 9:14 a.m., WILLIAMS was observed exiting the rear, white door of the Atkinson stash house pulling one black hardcover suitcase with his right hand and carrying a large heavy black duffel bag on his left arm.  The rear white door to the residence was left open.   WILLIAMS' right hand was now wearing a purple disposable rubber glove.  WILLIAMS was observed then placing the heavy duffel bag and suitcase inside of the Mercedes passenger van via the passenger side sliding door. WILLIAMS then entered the Mercedes van via the passenger side sliding door, and it closed from inside the vehicle.

15.     At approximately, 9:18 a.m., a newer model dark red Buick Envista with black rims and heavy tint pulled into the parking lot of the Atkinson stash house, conducted a three-point turn, and parked in the southwest corner of the lot facing northeast. Case agents then observed, via electronic surveillance, the passenger side sliding door of the Mercedes van open, and WILLIAMS exiting the van carrying a heavy blue hardcover suitcase.   Simultaneously, case agents observed Chamar ROGERS,

wearing a black t-shirt, black shorts, black Nike high socks, black slides, and a black leather designer hat, walk around the front of the Envista and step onto the running board of the Mercedes van. ROGERS then entered the Mercedes van through the open passenger side door and WILLIAMS, who remained outside the Mercedes van, opened the front passenger door and appeared to adjust the front passenger seat forward. Shortly thereafter, case agents observed a silver hardcover suitcase at the passenger-side sliding door of the van, and WILLIAMS struggled to remove the apparently heavy suitcase from the Mercedes van to the ground. WILLIAMS was then handed a large black duffel bag from inside the van, and WILLIAMS struggled to lower the heavy duffle bag to the ground. ROGERS was observed then exiting the passenger side door of the van, and while doing so, the black handle of a firearm could be observed in the front right pocket of ROGERS' shorts. Several screenshots are set forth below:





16.     At approximately, 9:21 a.m., case agents observed, via electronic

surveillance, ROGERS walking back to the Envista, and WILLIAMS carried the heavy

black duffel bag over to the open trunk of the Envista, and then was observed walking

back toward the rear door of the Atkinson stash house without the heavy black duffel

bag.  WILLIAMS and ROGERS both then walked over to the blue and silver hardcover

suitcases, and WILLIAMS wheeled the silver hardcover suitcase. ROGERS also wheeled the blue hardcover suitcase toward the open rear white door of the Atkinson stash house. ROGERS had a set of keys in his right hand and as he passed the Envista, the headlights blinked as if it was remotely locked. WILLIAMS and ROGERS then entered the rear white door of the Atkinson stash house and closed it. At approximately 9:53 a.m., ROGERS was observed, via electronic surveillance, exiting the rear white door of the Atkinson stash house carrying a black plastic grocery bag, which appeared to be full based on the rounded sides of the bag. ROGERS walked behind the Envista and shortly thereafter, the headlights blinked, indicating the vehicle being unlocked by ROGERS. The Envista departed the parking lot traveling northbound on N 18th Street. At approximately 10:19 a.m., WILLIAMS was seen exiting the residence with a red plastic bag in his right hand. WILLIAMS opened and entered the van. WILLIAMS then travelled north on 18th Street.

17. On July 27, 2024, at approximately 6:08 p.m., NICHOLS, using 262-993-0926 received an incoming call from 747-955-6842 used by WILLIAMS. NICHOLS answered, "Hello". WILLIAMS replied, "Yeah", NICHOLS replied, "I got it, I'm at the trap". WILLIAMS replied, "Man, Don't… Everybody don't need to be in there right now". NICHOLS replied, "Alright, I know. Everything over there. Just pull out a box. A box at a time". WILLIAMS replied, "No". NICHOLS replied, "Or". WILLIAMS replied, "[UI] same on the other side. He gonna meet you over there. [UI] staying on the left side". NICHOLS replied, "Okay". WILLIAMS replied, "[UI] put everything on the right side. Yo, I'm finna count everything". NICHOLS replied, "Alright". WILLIAMS replied, "Aight. He finna pull up. So wait til he pull up to go carry shit in the house". NICHOLS

10

replied, "Already got Dez [PH] and [UI] wit me, bro". WILLIAMS replied, "Huh?". NICHOLS replied, "Imma just wait". WILLIAMS replied, "I don't want them seein' the other side, you know". NICHOLS replied, "I know, bro. I'm not gonna show them the other side, G. No nobody. So nobody gonna know, bro". WILLIAMS replied, "Trust nobody. [UI] nobody needa see that shit". Based upon my training, experience, and investigation to date, I believe that WILLIAMS has had contractors working on the interior of the apartment the last few days and WILLIAMS does not want people to see that part of the building. I believe that WILLIAMS is remodeling the interior in order to store and conceal drugs within the residence.

18.     At approximately, 9:32 p.m., NICHOLS, using 262-993-0926, received and incoming call from 747-955-6842 used by WILLIAMS. NICHOLS answered, "Hello?". WILLIAMS replied, "You still at the trap?". NICHOLS replied, "What". WILLIAMS replied, "Still at the trap?". NICHOLS replied, "Yeah". WILLIAMS replied, "I been sending heads over there". NICHOLS replied, "Alright". Based upon my training, experience, and investigation to date, I believe that WILLIAMS told NICHOLS that he was going to send customers to the house (i.e., he was referring to having the "heads", meaning crackheads or customers).

19.     At approximately, 9:32 p.m., NICHOLS, using 262-993-0926, received and incoming call from 747-955-6842 used by WILLIAMS. NICHOLS answered, "Hello?". WILLIAMS replied, "What up, bro. People downstairs, you got green?". NICHOLS replied, "You said what?". WILLIAMS replied, "I said, nigga downstairs, you gotta go". Based upon my training, experience, and investigation to date, I believe that WILLIAMS

told NICHOLS that he had a customer downstairs that WILLIAMS sent over and he needed to go serve that customer.

20.     Case agents believe WILLIAMS uses the Target Cell Phone because: (i) through investigation and their use of law enforcement search engines, case agents have found that this cell phone is associated with Dominique L. WILLIAMS (black male 09/07/1989); and (ii) WILLIAMS indicated he used the Target Cell Phone to law enforcement, as further detailed below.

21.     On Wednesday, June 5th, 2024, case agents were contacted by DEA Special Agent Garrett Malloy. SA Malloy works at ORD. SA Malloy was notified that WILLIAMS was flying from ORD to LAX. The flight was to leave at 06/04/2024 at approximately 10:35AM. Officers at LAX had consensual contact with WILLIAMS at ORD. Based on their conversation, officers asked for consent to search WILLIAMS luggage that was going with him to LAX. WILLIAMS gave consent for officers to search the bags and officers located closed manilla envelopes in the luggage. Inside of the manilla envelopes was a large amount of US Currency. Also inside of the manilla folders were dryer sheets. WILLIAMS told officers that he was in Milwaukee, Wisconsin prior to coming to ORD to fly to LAX. WILLIAMS told officers that he works in the real estate business in Milwaukee. WILLIAMS further told officers that his phone number is the Target Cell Phone. Officers have not had the money officially counted, but they believe it to be well over $100,000 based on their previous experience in seizing US Currency.

22.     In my training and experience, I have learned that T-Mobile is a company that provide cellular communications service to the public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and

generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

23.     Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

13

## E911 Phase II / GPS Location Data

24.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I believe that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

25.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber

14

Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## AUTHORIZATION REQUEST

26.     Based on the foregoing, I request that the Court issue the proposed warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27.     I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

28.     I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

29.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 120 days after the collection authorized by the warrant has been

15

completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

30.     Because the warrants will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

# **ATTACHMENT A**

## **Property to Be Searched**

1.      Records and information associated with the cellular device assigned call number 626-654-9974 ("Target Cell Phone") that is are in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      Target Cell Phone.

## ATTACHMENT B

## Particular Things to be Seized

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period March 26, 2024 to the date of this warrant:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

18

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, per call measurement data (PCMD), Timing Advance, True Call, RTT, LOCDBOR, or similar and real time cell site information for 30 days and other precise location information.

19

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

20